UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID L. ROBERTS,  
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,  
    Defendant.

Case No. 1:19-cv-734
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff David L. Roberts brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

**I. Procedural Background**

Plaintiff filed his applications for DIB and SSI in February 2016, alleging disability since March 2, 2014 due to bipolar disorder, anxiety disorder, depression, attention deficit disorder ("ADD"), and learning disabilities. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Deborah F. Sanders. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on February 9, 2018. On September 6, 2018, the ALJ issued a decision denying plaintiff's DIB and SSI applications. The Appeals Council denied plaintiff's request for review, making the decision of ALJ Sanders the final decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2017.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 2, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bipolar disorder, paranoid schizophrenia, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [plaintiff] can frequently reach over head bilaterally; the [plaintiff] is limited to simple, routine tasks, but not at production rate pace and with no strict production quotas, the [plaintiff] is able to adapt to routine work changes; the [plaintiff] may have occasional interaction with coworkers and supervisors.
>
> 6. The [plaintiff] is capable of performing his past relevant work as an industrial sweeper (DOT code 389.683-010). This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 2, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-23).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

4

### D. Specific Error

On appeal, plaintiff argues that the ALJ erred in evaluating the medical opinions of record and therefore formulated an improper physical RFC. (Doc. 10).[1] Specifically, plaintiff alleges that no state agency physicians reviewed the record or offered an opinion about his physical RFC despite the ALJ's notation that state agency reviewing physicians found plaintiff capable of performing work at all exertional levels. (*Id.* at 7). Plaintiff argues that the ALJ erred in affording "controlling weight" to the opinion of his physician Dr. Andrea Bell-Willis, who opined that he has "no physical impairment." (*Id.* at 8-9). Plaintiff argues that there are very few treatment notes from Dr. Bell-Willis in the record and it is unclear whether she should be regarded as a treating source physician. (*Id.*). Plaintiff contends that the opinion of consultative examining physician Dr. Gary Ray should be accorded greater weight because it is consistent with the physical evidence of record, including new x-ray studies and plaintiff's history and medical records. (*Id.* at 9). Plaintiff states that after the hearing, ALJ Sanders ordered the physical consultative examination with Dr. Ray to assess the extent of his spine problems and improperly substituted Dr. Ray's findings with her own interpretations of the medical record. (*Id.* at 10-11).

In response, the Commissioner contends that the ALJ's physical RFC is supported by substantial evidence. (Doc. 16 at 3). The Commissioner argues that the ALJ fully considered all of the physical medical evidence of record despite the fact that plaintiff's alleged physical

---

[1] The undersigned will solely consider the physical evidence of record. In his statement of errors, as discussed below, plaintiff challenges the weight that the ALJ afforded to his treating physician and the consultative examining physician. Therefore, the Court determines that plaintiff has waived any arguments related to his mental impairments. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (internal citations omitted).

5

impairments were not the focus of his disability claims and reasonably concluded that plaintiff could perform a full range of work at all exertional levels. (*Id.* at 4). The Commissioner further argues that the ALJ properly weighed the medical opinion evidence and reasonably afforded controlling weight to Dr. Bell-Willis' opinion as it was consistent with the medical record and her treatment history with plaintiff. (*Id.* at 6). The Commissioner argues that although Dr. Bell-Willis only saw plaintiff once, she worked with another physician, Dr. Shahid, who treated plaintiff several times, and Dr. Bell-Willis therefore "had access to and was knowledgeable about Plaintiff's impairments and treatment." (*Id.*). The Commissioner maintains that the ALJ properly afforded little weight to the opinion of consultative physician Dr. Ray because it was inconsistent with his examination findings and based on plaintiff's subjective complaints. (*Id.* at 7-8).

On May 19, 2017, plaintiff saw Dr. Andrea Bell-Willis, M.D., at the Kettering Health Network Primary Care Office in Hamilton, Ohio for an annual physical and requested that she complete disability paperwork for the Ohio Department of Job and Family Services. (Tr. 748). Plaintiff had previously treated with Dr. Nalia Shahid, M.D., at the Kettering Health Network beginning in October 2016. (Tr. 741-57). Dr. Bell-Willis recorded plaintiff's complaints of being unable to work with others due to mental impairments, specifically chronic paranoid schizophrenia. (Tr. 748). Dr. Bell-Willis noted that plaintiff had difficulty leaving home. (*Id.*). Dr. Bell-Willis also noted that plaintiff's disability claim was related to his chronic mental conditions that developed as a result of the sudden death of his brother. (*Id.*). On physical examination, Dr. Bell-Willis found that plaintiff had a normal range of motion in the neck and musculoskeletal regions, and he exhibited no edema or tenderness. (Tr. 749).

On May 23, 2017, Dr. Bell-Willis submitted a basic medical report indicating that plaintiff suffered from bipolar disorder, paranoid schizophrenia, PTSD, hypertension, and a history of assault. (Tr. 739). Dr. Bell-Willis noted that plaintiff has difficulty in social situations and public areas, and his symptoms became aggravated upon the sudden death of his brother. (*Id.*). In her physical functional capacity assessment, Dr. Bell-Willis noted that plaintiff had no physical limitations standing/walking, sitting, lifting/carrying, pushing/pulling, bending, reaching, handling, doing repetitive foot movements, seeing, hearing, or speaking. (Tr. 740). Dr. Bell-Willis specifically opined that plaintiff had "no physical impairment" and questions on other impairments should be deferred to plaintiff's psychiatrist or psychologist. (*Id.*).

After the ALJ hearing, on March 13, 2018, plaintiff completed a consultative examination with Dr. Gary Ray, M.D. (Tr. 783-91). Plaintiff's chief complaints were neck and back pain, reporting an onset about 30 years prior. (Tr. 783). Plaintiff reported having intermittent daily neck pain, which was more severe at times on the left side. He also reported constant low back pain which was severe at times. Plaintiff reported to Dr. Ray that he "thinks" can lift and carry up to 20 pounds, sit for an hour at a time, stand for an hour at a time, and walk for a half hour at a time. (Tr. 784). Plaintiff reported trouble with bending, squatting, and ascending and descending steps. (*Id.*). On examination, plaintiff ambulated with a normal gait, and he exhibited negative straight leg raising test results, full strength in his joints, normal grasp, normal manipulation and fine coordination, and normal range of motion. (Tr. 784-85, 788-91). There was mild to moderate tenderness at the center and left cervical, thoracic, or lumbosacral areas and no tenderness at the right cervical, thoracic, and lumbosacral areas. No muscle spasms were present, and plaintiff had no trouble getting on and off the examination table. Dr. Ray reported that imaging of plaintiff's cervical spine revealed only mild findings, and clinical

imaging of his lumbar spine revealed no significant degenerate changes. Dr. Ray opined that plaintiff could lift twenty pounds, sit and stand for up to one hour at a time, and could occasionally bend, stoop, squat, kneel, and crawl. (Tr. 785). Dr. Ray also opined that plaintiff should avoid climbing activities. (*Id.*).

In weighing the opinions of medical sources, there is a hierarchy of medical opinions. An ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even if a treating source's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c). The opinion of a non-treating but examining medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6).

In this case, the ALJ afforded Dr. Bell-Willis' May 2017 opinion controlling weight under the treating physician rule. (Tr. 22). The ALJ noted that Dr. Bell-Willis' opinion that

8

plaintiff has "no physical impairment" and has no limitations in his ability to walk, stand, sit, lift, carry, push, pull, bend, reach, handle, or engagement in repetitive movements was consistent with the medical record and treatment history with plaintiff. (*Id.*). The ALJ afforded Dr. Ray's consultative examination opinion "little weight." (*Id.*). The ALJ concluded that Dr. Ray's opinion on plaintiff's physical limitations was not consistent with his own examination findings, which showed that plaintiff had full strength in his joints, normal grasp, manipulation, and fine coordination, and generally normal range of motion. (*Id.*). The ALJ also concluded that Dr. Ray's opinion with respect to plaintiff's ability to sit, stand, and walk was based on plaintiff's subjective complaints and not the medical record. (*Id.*).

The ALJ's decision to afford greater weight to the opinion of Dr. Bell-Willis than the opinion of Dr. Ray is supported by substantial evidence. The Court notes that this case is somewhat unique in that Social Security plaintiffs generally challenge the ALJ's decision *not to afford* controlling weight to his or her treating physician. Here, in contrast, plaintiff challenges the ALJ's decision *to afford* controlling weight to his treating physician, who he argues should not be regarded as such. It is undisputed that Dr. Bell-Willis' opinion is adverse to plaintiff, as it concludes that plaintiff has no physical impairment and no functional limitations. (Tr. 740). Nevertheless, the ALJ reasonably afforded Dr. Bell-Willis' opinion controlling weight. The ALJ reasonably found that Dr. Bell-Willis' opinion on plaintiff's lack of physical impairments was most consistent with the medical evidence of record. Dr. Bell Willis' opinion is consistent with the annual physical examination that she conducted days before issuing her opinion. During the physical examination, Dr. Bell-Willis found that plaintiff had normal range of motion in the neck and musculoskeletal regions, and he exhibited no edema or tenderness. (Tr. 749). Dr. Bell-Willis' opinion is also consistent with other physical examinations in the record conducted at the

9

Kettering Health Network between October 2016 and January 2018, all of which suggest that plaintiff did not have any notable physical impairments. (*See* Tr. 741-757). Plaintiff argues that he only treated with Dr. Bell-Willis on one occasion; therefore, she should not be considered a treating physician and her opinion should not be given controlling weight. (Doc. 10 at 8-9). However, the ALJ reasonably concluded that Dr. Bell-Willis was a treating source. Dr. Bell-Willis was a physician at the Kettering Health Network Primary Care Office where plaintiff treated. In addition to the findings from her one-time physical examination conducted in May 2017, Dr. Bell-Willis presumably had access to plaintiff's records at Kettering and was therefore able to opine on plaintiff's physical impairments as a treating source. *See Guyaux v. Commissioner of Social Security*, No. 13-12076, 2014 WL 4197353, at *16 (E.D. Mich. Aug. 22, 2014) (noting that opinions from physicians in the same medical practice can constitute a "continuum of care" for purposes of the treating physician rule). Dr. Bell-Willis' opinion is also consistent with the consultative examination of Dr. Ray, who found that plaintiff had normal or slightly below normal range of motion of the cervical spine and shoulders. (Tr. 789).

In addition, the ALJ reasonably afforded Dr. Ray's consultative examination opinion little weight. The ALJ appropriately concluded that the limitations assessed by Dr. Ray were solely based on plaintiff's subjective complaints and inconsistent with Dr. Ray's findings on physical examination. Dr. Ray found that plaintiff ambulated normally and had mild to moderate tenderness at the center and left cervical, thoracic, and lumbosacral areas. (Tr. 784). Plaintiff generally had normal or slightly below normal range of motion during the manual muscle examination. (Tr. 789). Dr. Ray also reviewed new x-rays of the spine, which showed that plaintiff had no significant degenerative changes in the lumbar spine and only mild to moderate degenerative changes in the cervical spine. (Tr. 785). There was no evidence of myelopathy or

radiculopathy. (*Id.*). Dr. Ray did not provide an explanation or examination findings to support the specific physical limitations that he assessed. In opining on plaintiff's ability to perform work-related physical activities, Dr. Ray noted that plaintiff could lift 20 pounds, sit for up to one hour at a time, stand for up to one hour at a time, ambulate for one hour at a time, and perform occasional bending, stooping, squatting, kneeling, and crawling activities. (*Id.*). During the consultative examination, however, plaintiff reported to Dr. Ray these exact physical limitations:

> He thinks he can lift and carry up to about 20 pounds. He reports being able to sit for up to one hour at a time. He reports being able to stand for up to one hour at a time. He reports being able to walk for up to ½ hour at a time. He reports having trouble with bending, squatting, and ascending and descending steps.

(Tr. 785). Therefore, the ALJ reasonably concluded that the physical limitations assessed by Dr. Ray were based on plaintiff's subjective complaints.

Plaintiff argues that the longitudinal medical record more appropriately supports the opinion of Dr. Ray. Plaintiff cites to January 2014 treatment notes documenting limited joint mobility and back pain; a March 2014 physical examination diagnosing scoliosis; ER records from February 2016 after plaintiff fell on ice and struck his head and back on the ground; a February 2016 "active medication list" revealing that plaintiff was prescribed multiple medications; a February 2016 physical examination documenting joint pain, muscle pain, stiffness, tenderness, neck pain, and back pain; and January 2017 progress notes documenting back pain. (Doc. 10 at 10) (citing Tr. 319, 322-23, 325, 500-02, 557, 553, 743). However, plaintiff has not shown how these records support a disability finding, or how these records support further physical limitations in the RFC than the ALJ assessed. The undersigned notes that even where substantial evidence would support a different conclusion or where a reviewing

court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999).

Plaintiff also argues that the ALJ substituted her own opinion for the medical expertise of Dr. Ray and improperly interpreted "raw medical data." The Court disagrees. Even though the ALJ referred plaintiff for the consultative examination to clarify the nature of plaintiff's physical impairments, she was in no way bound to credit Dr. Ray's opinion over the objective evidence of record and the treating source opinion of Dr. Bell-Willis, especially given that Dr. Ray's opinion was inconsistent with the medical evidence and based on plaintiff's subjective complaints. The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of fact and conclusions of law." 20 C.F.R. § 404.1527(e)(2). "Physicians render opinions on a claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner." *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138, at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted*, No. 1:13-cv-679, 2015 WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (the responsibility for assessing a claimant's RFC lies with the ALJ). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 391 F. App'x at 439 (6th Cir. 2010) (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001)). Here, the ALJ crafted an RFC by conducting a thorough review of the medical evidence and weighing the medical

opinions, and she gave valid reasons for the weight she afforded to these opinions. Accordingly, plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: Oct. 2, 2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DAVID L. ROBERTS,<br>　　Plaintiff, | Case No. 1:19-cv-734<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　Defendant. | |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).